## PATTON v. CONE, ADLER AND THOMPSON.

1. CHANCERY PRACTICE. *Formal settlements will not be opened. When.* Where no fiduciary relation exists between the parties, nor any great inequality in their mental and business capacity, formal settlements, closed by receipt or note, will not be opened altogether except for fraud, or such a number of errors as to demonstrate that justice cannot be administered without taking the accounts *de novo*, and in the absence of fraud, clear testimony is required to surcharge and falsify settled accounts, and after long delay and the destruction or loss of papers, only the clearest, strongest, and most undoubted evidence will suffice.

2. SAME. *Same. Sufficient grounds for not opening.* The court refused to open accounts closed by formal settlements and a note at two years, secured by a trust conveyance of land with power to sell, upon a bill filed by the debtor more than two years, after the property had been sold, with his knowledge and consent, under the trust, in satisfaction of the debt secured, it appearing that the papers on which the settlement had been made were destroyed at the time by common consent, except one retained by the debtor and long afterwards lost by him, the evidence relied on to surcharge and falsify the accounts consisting almost exclusively in the testimony of the debtor in conflict with the sworn answer and evidence of the creditor.

Patton *v.* Cone.

3. SAME. *Same. Evidence. Burden of proof not changed by order to Master. When.* Pending the suit to surcharge and falsify settled accounts, a reference was made to the master to take proof and report upon the various matters of account complained of, "with a view to expedite the hearing of the cause, the parties, by their solicitors, agreeing thereto." *Held,* that the order did not prejudice the legal rights of the parties, or change the burden of proof.

4. CHANCERY PRACTICE. *Ordering of accounts. Reprehended.* The practice of ordering accounts before the adjudication of the questions involved, reprehended.

5. TRUSTEE'S COMPENSATION. *To be paid out of the fund. When.* In the absence of any agreement to the contrary, the claim of a trustee, under a trust assignment for creditors, for his compensation, would be on the trust fund, not against the maker of the deed individually.

FROM WASHINGTON.

Appeal from the Chancery Court at Jonesboro. H. C. SMITH, Ch.

KIRKPATRICK for complainant.

INGERSOLL, LOGAN & LUCKEY for defendants.

COOPER, J., delivered the opinion of the court.

On the 2d of November, 1868, the complainant had a settlement with the defendant, Cone, of his individual indebtedness to the firm of Cone, Adler & Shipley, a firm composed of the defendant Herman Cone, Jacob Adler, and Henry T. Shipley. This settlement embraced only two items, one being a debt due by note which had been lost, and was supplied by affidavit of the defendant Cone, the other being an open account about which there is no dispute. By this settlement the balance of complainant's individual debt was found to be 1,546.93, and he gave

the defendant an order for $1,125, to be credited as $1,100 if collected. In fact, only $600, as of the 26th of January, 1869, were ever realized on this order. The complainant had previously been in partnership with one John B. Hunt, under the style of Hunt & Patton, and also with Hunt and one J. C. Barkley, under the style of Patton, Hunt & Barkley, and these firms became also indebted to Cone, Adler & Shipley. In December, 1868, the latter firm was dissolved, and in the settlement of the partnership business, the claim against the complainant and the two firms of which he was a member fell to the share of defendant Cone. On the 30th of March, 1869, complainant and Cone had another settlement, which embraced the balance of debt due on the previous settlement, and the debts of the firms of which complainant was a member to Cone, Adler & Shipley, the latter indebtedness having devolved upon complainant individually, and also other individual liabilities of the complainant to that firm. The items embraced in this settlement, consisting of balances of debt, notes and accounts, were before the parties at the time, and calculations of interest were made. After the amount of complainant's liability was ascertained, he executed his note to Cone of that date, at two years, for $3,500, interest being calculated on the balance of debt for the two years the note had to run, and embodied therein. At the same time, the complainant conveyed to the defendant Adler a tract of land in trust to secure this note if not paid at maturity, with power of sale. "After the thing was all com-

pleted," says the complainant in his deposition, "and I had signed up the papers, Mr. Cone gathered up all the papers, except one which we had been figuring or calculating on, and burnt them up, to which I made no objection." The one paper thus retained by the complainant remained in his possession, or in the possession of his legal adviser, until after the sale of the land under the trust conveyance, and was then lost by the complainant, at what precise date does not appear. The complainant made a payment of $500 on the note for $3,500. Afterward, on the 30th of December, 1871, the land was sold under the trust deed, and bought by Cone at $2,500, and was then sold and conveyed by Cone to the defendant Thompson for $3,150, the then amount due upon the complainant's note. The record shows that the sale was first negotiated with the expectation that complainant would join in the conveyance, he having consented to do so in consideration of the satisfaction of his note. The existence of an injunction, at the suit of another party, enjoining the complainant from making any disposition of his land, prevented the agreement from being carried out by the mode actually adopted, with the knowledge and consent of all the parties. One object of the present bill was to set aside the sale, but this part of the relief asked has been abandoned.

After the settlement of the 30th of March, 1869, complainant became individually indebted to the defendant Cone for various sums, in settlement of which and advances made at the time, the complainant, on the 1st of November, 1869, executed to Cone his

note of that date, at twelve months, for $1,250, embodying a promise also to make a deed of trust on stock to secure the debt, and closing thus: "But can discount it at the rate of twenty per cent per annum, according to dates, until due." Upon this note several payments have been made, leaving a balance due on the 15th of March, 1871, the date of the last payment, of $114.67.

The defendant Cone at some time, but precisely when does not appear, became the purchaser of the complainant's note to a third person for $800, payable in gold coin, on which several payments had been previously made in currency, credited as so many dollars. The complainant took up this note by paying Cone $433.50 therefor, date not given. At the settlement, the payments were reduced to their gold value, and not deducted at their nominal amount.

This bill was filed on the 13th of August, 1874, to go behind the various settlements between the complainant and the defendant Cone, and to surcharge and falsify the accounts between the parties. The defendants answered the bill, proof was taken, and on the 5th of June, 1875, a reference was made to the master to ascertain and report upon the various matters of account, "with a view," says the order, "to expedite the hearing of this cause, the parties by their solicitors agreeing thereto." Like most short cuts, this course seems only to have led to delay and confusion.. The master made his report, to which a number of exceptions were filed on both sides, and the report was recommitted to the master with instruc-

Patton *v.* Cone.

tions. The master again reported, the parties again excepted, and the court undertook to settle the details of the accounts, without ever determining the principles of law which control the rights of the parties, and the principles upon which the account should be taken. Both parties agree that the accounts as taken tend rather to confuse than to enlighten. The learned counsel for the complainant mildly concedes that "it is very difficult to ascertain from the statements of the master precisely what he intended to report." While the learned counsel of the defendant puts it somewhat more pointedly by suggesting that the reports "are so confused, so unintelligible, and so absurd, that they ought not to be noticed in this court." The court is inclined to concur with the one, and not altogether to dissent from the other. But it must be conceded that the clerk is not altogether to blame. A general reference, which settles nothing where there are questions of law involved, must be necessarily confusing to the clerk who confines himself to his own province, the finding of facts. It is impossible for him to act intelligently unless he assumes, in connection with his own functions, the functions of the Judge. He has no guide as to what he shall omit or insert, or as to how he shall arrange his material. By far the easiest and best mode of conducting such case is to have a hearing upon the merits before the reference.

In this case the rights of the parties turn upon the point whether the complainant has made out a sufficient ground for opening the settlements at all;

and if so, whether the settlements shall be opened altogether, or only to the extent of the specific errors pointed out in the bill, and established by proof. The general rule undoubtedly is, that where no fiduciary relation exists between the parties, and no great inequality in the mental or business capacity of the parties, formal settlements closed by receipt or note will not be opened altogether except for fraud, or such a number of errors and mistakes as will demonstrate that justice cannot be administered without taking the accounts *de novo.* In the absence of fraud, too, it requires clear testimony to surcharge and falsify settled accounts, and after long delay and the destruction or loss of papers, the clearest, strongest, and most undoubted testimony will be demanded. In this instance, we have two settlements within five months, the last closed by a note secured by a deed of trust, having two years to run. The papers on which the last settlement was made were, as the complainant himself testified, destroyed by mutual consent, except one paper on which they had made their figures and calculations, and this paper was lost by him. The parties occupied no fiduciary relation to each other. Both were merchants, and, for aught that appears in this record, equally intelligent, and competent business men. The suit was not instituted until over five years after the last settlement of accounts, and over two years after the sale of the land under the trust deed. Obviously, the case is one for the application of the strictest rule on the subject, there being no pretence for a charge of positive fraud.

Patton *v.* Cone.

In the settlement of the 2d of November, 1868, the complainant claims that there was a charge of $35.79 usurious interest, but the statement of the bill shows that this excess, if such it be, was not occasioned by any usurious agreement, or any calculation of interest at a higher rate than six per cent per annum. That settlement embraced only two items, an account about which there is no controversy, and a note which was lost, the date, amount, and date of maturity being shown by an affidavit of the defendant Cone. This affidavit is silent as to whether the note bore. interest between the date of its execution and the date of its maturity. If, now, interest be calculated during that period, the amount ascertained by the settlement is substantially correct. If, on the other hand, the defendant was not entitled to interest during that interval, the excess claimed was made. The complainant does not say, either in his bill or his deposition, that the note did not in fact call for interest from date, but simply relies on the absence of such fact in the affidavit. The defendant distinctly asserts that interest was only calculated at the legal rate, and gives it as his impression that the note did actually bear interest from date to maturity. Clearly, the complainant has failed to make out a sufficient case to surcharge or falsify this settlement.

The bill undertakes to state the items which went into the settlement of the 30th of March, 1869, and claims that the sum found by the addition of these items with legal interest thereon for the two years the $3,500 note had to run, falls short of the amount of

that note, and that the difference consisted of usurious interest.

The defendant distinctly denies that interest was calculated at a higher rate than that allowed by law. The items mentioned by the bill are in some respects changed, and other items added by the deposition of the complainant. The claim of usurious interest turns out in this, as in the previous instance, not to be usury at all. If there be any error in the settlement, it is in the fact that an item of $513 was improperly charged to the complainant. This item may be designated as the "wood obligation." The complainant says it was given as a conditional payment of the balance found by the settlement of the 2d of November, 1868, after deducting the order for $1,125, which was also based upon a wood contract, and was taken to be credited if paid at $1,100. The complainant concedes that nothing was realized from the wood obligation, but insists that he was improperly charged with the amount in the settlement of the 30th of March, 1869, being also charged with the balance of the original settlement as a conditional payment of which it was given. The defendant asserts that this claim was independent of that settlement, and that he was entitled to it in addition to the balance on the former settlement, and that it was properly charged to the complainant in the settlement of the 30th of March, 1869. There is no other evidence directly upon the point. There are circumstances which, taken separately, tend to sustain each hypothesis, neither set of circumstances sufficiently pre-

Patton v. Cone.

ponderating to produce conviction. If the account was now to be taken for the first time, or were opened generally, in which case the burden of sustaining the claim of debt would be on the defendant, I would say that the defendant had failed to establish it. The question being, however, upon the right of the complainant to open the settlements, the burden is upon him and he has failed to establish the error. The evidence falls far short of that clearness, certainty and sufficiency required after such long delay, and the destruction and loss of papers.

It has not been argued, in this connection, that the order of reference, "the parties by their solicitors agreeing thereto," actually opened the account so as to change the burden of proof on the hearing of the cause on its merits. The object of that order was, as expressed on its face, to expedite the hearing of the cause. It was, doubtless, not intended to affect the ultimate rights of the parties, but merely to ascertain facts. The practice of entering such decrees is, however, dangerous, for a very slight change in the language used might settle rights in the final trial on the merits, and prevent an appeal.

There is no evidence in this record to show that the settlement of the note payable in gold coin was not made upon a proper calculation of the value of the currency reduced to a gold basis at the dates of the several payments. The argument is, that the defendant, having bought the note after the payments were made, must be considered as a purchaser of so much of the note as there remained due, treating the

payment as an extinguishment of the debt to the extent of their nominal amounts. But the rights of the parties must depend upon the contract between the debtor and the original creditor at the time those payments were received, and upon the contract between the creditor and defendant when the note was bought by the latter. The record is entirely silent as to any contract varying the terms of the note itself, or the rights of the assignee under those terms. The entry of the credits on the note itself can have no more effect than if separate receipts had been given for so many dollars in currency. Besides, the parties themselves have, by settlement, shown how they construed their respective rights, and until such construction is shown to be illegal there is no pretence for interference with their deliberate action.

The only remaining ground of complaint relates to the complainant's note for $1,250, part of which still remains unpaid. That note, it will be recollected, was payable one year after date, and seems to concede to its maker the right to discount it at the rate of twenty per cent per annum, according to dates until due. The defendant, who produces this note, offers no explanation of this peculiar clause. The complainant says in his deposition that the actual consideration was only the sum of $1,000, and that 25 per cent. was added in by way of usurious interest, while the defendant in his deposition says nothing on the subject. Curiously enough, the bill as to this claim fails to make any charge of usury, and, therefore, the denial of usury in the defendant's answer,

Patton *v.* Cone.

although general as to all transactions, does not necessarily embrace it. It is very clear, that in the absence of any charge in the bill on the subject, the evidence of usury would be irrelevant. But the defendant, as to this very claim, as well as to the balance due upon the note for $3,500 if credited only with the $2,500 bid at the trustee's sale, asks for a decree for any balance which may be found due him upon taking an account. If, now, the defendant seeks positive relief in this court, or, upon a general dismissal of the bill, were to sue at law, it would be open to the complainant to insist that the debt, so far as it is legal, has been fully paid.

In order to save further litigation, we hold that the note has been paid and extinguished, the balance still due upon it being about the amount of the excess in the interest. The balance of the $3,500 has also been settled by the sale to Thompson. The decree will adjudge the rights of the parties accordingly. The bill will be in other respects dismissed. The costs have been unnecessarily increased by the order of the reference, consented to by both parties, and the proceedings growing out of it. The defendant Cone ought to bear his share of these costs, and as the complainant has succeeded in obtaining some relief, the defendant is legitimately chargeable with another portion of the costs. An equal division of the costs between the complainant and defendant Cone is, perhaps, as near an approximation to the justice of the case in this regard as can be attained.

The claim of the defendant Adler against the com-

plainant for his compensation as trustee cannot be sustained. In the absence of any agreement between the parties, the demand for compensation would be on the trust fund, or its proceeds, not on the complainant individually. Besides, the bill seeks no account as between complainant and Adler, and the relief granted as between complainant and Cone forms no basis for any decree in favor of Adler, either against complainant or against Adler's co-defendant.